## Bondholders Securities Corporation v. Schroerlucke

*Doty & Thornton,* for plaintiff.
*Grote & Grote,* for defendant.

W. WALLACE SMITH, J., forty-sixth judicial district, specially presiding, October 21, 1935.—This is an action to recover the balance due upon a note. At the trial the plaintiff offered in evidence the note with the payee's endorsement thereon, showed that the note was executed and delivered by the defendant, the authenticity of the endorsement and that various payments were made thereon, and then rested. The original principal was $2,250. There was no dispute as to the calculation of the balance, which with the additions of interest amounted to $2,423.93. The defendant then offered evidence which was taken over objection, reserving to the plaintiff the right to move to strike out in the event the defendant's later proof did not meet the burden of proof on the question of the plaintiff being a holder in due course. After the defendant rested, the plaintiff moved to strike out this

testimony on the ground that there was no evidence to go to the jury that the plaintiff was not the holder in due course of the note. The court granted the motion and gave binding instructions to the jury in favor of the plaintiff. The defendant has now moved for judgment in favor of the defendant notwithstanding the verdict.

That this note was negotiable is clear, and in all events was settled by the opinion of Judge Gray disposing of a preliminary motion in connection with the pleadings. This being the case, the presumption was that the plaintiff was a holder in due course under section 59 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, which reads:

"Every holder is deemed, *prima facie*, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

After the plaintiff rested, therefore, the burden of proof was upon the defendant to show that the title of some person who negotiated the instrument was defective, or that the plaintiff was not a holder in due course. In our opinion the defendant failed to offer sufficient evidence of either, and there was nothing to submit to the jury.

The note reads as follows:

"Lot 4 Bl. 27 Central Miami Part Two.

No. . . . . . . . . $2250.00      Miami, Florida Mar. 24, 1925.

In———payments of $50.00 each month——— after date, for value received. . . . I . . . . promise to pay to the order of Edward E. Dammers Realty Corporation Twenty-two Hundred Fifty & 0/100———Dollars at Office of Edward E. Dammers Realty Corporation, 17 East Flagler Street, Miami, Florida, with interest thereon at the rate of seven per cent. per annum from date until fully paid. Interest payable semi-annually.

The maker and endorser of this note further agree to waive demand, notice of non-payment and protest; and in case suit shall be brought for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection. Deferred interest payments to bear interest from maturity at eight per cent. per annum semi-annually. Upon default of any installment of this note the entire amount shall become due and payable. 177 N. W. 33d St., Miami, Fla.

      (Signed)   Barbara Schroerlucke (Seal)"

On the back thereof appears the following: .

### "PAYMENTS

| Date | Interest | Paid To | Principal | Bal. |
|------|----------|---------|-----------|------|
|      |          |         |           | 2250.00 |
|      |          | 4/22/25 | 50.       | 2200.00 |
| 7    |          |         | 150.00    |         |
| 10   |          | .       | 150.00    | 1900.00 |
| 11   |          |         | 50.       | 1850.00 |
| 12   |          |         | 50.00     | 1800.00 |

## EDWARD E. DAMMERS REALTY CORPORATION
By John G. Adams
Vice-President.

| 1926 | Payments | Balance |
|------|----------|---------|
| Jan. | 50.00 | 1750.00 |
| Feb. | 50.00 | 1700.00 |
| April | 100.00 | 1600.00 |
| May | 50.00 | 1550.00 |
| June | 50.00 | 1500.00 |
| July | 50.00 | 1450.00" |

The defendant asserts that the position of the endorsement of the payee, the Edward E. Dammers Realty Corporation, shows that the endorsement was made during January 1926. In our opinion this is not a proper inference. The endorsement itself is undated, and there-

fore, under section 45 of the Negotiable Instruments Law, the presumption is that it was prior to maturity. The physical position of the endorsement, moreover, does not support the defendant's contention. The note was an instalment one, providing for the payment of $50 per month beginning April 24, 1925. On the back of the note appeared a printed form containing six lines and five columns in which were entered the first five payments. As the space occupied by this printed form excluded room for the endorsement, which therefore necessarily was made below it, the only inference to be drawn from its position on the back of the note alone, was that the endorsement occurred after the first payment, namely that of April 22, 1925. Even this would be giving the defendant the benefit of an assumption, as the form may have been stamped upon the back of the note and left blank earlier than the time of its being used for the entry of the first payment.

The defendant contends that the date of maturity must be regarded as May 24, 1925, offering as proof of this a statement from the plaintiff's reply, reading: "Defendant . . . on the contrary defaulted on the payment due on May 24, 1925, whereby the entire sum became due and payable." This statement in the plaintiff's reply was in reply to the position asserted by the defendant in the affidavit of defense. We doubt whether under the circumstances the fact that the plaintiff accepted without denial the defendant's interpretation of the legal effect of a default on May 24, 1925, would amount to an admission of such legal effect. This admission would at most seem to be that on that date a default occurred. The conclusion that the whole sum then became due and payable by reason of the acceleration clause was a legal one. Such an acceleration clause is, furthermore, held not to be self-executing, but merely to confer an option on the holder to treat the note as due: U. L. A. 64; Nickell v. Bradshaw, 94 Ore. 580, 183 Pac. 12; Putthoff et al. v.

Walker et al., 213 Mo. App. 228, 248 S. W. 619. There is no evidence of any exercise of the option of accelerating maturity by the holder. It would seem, therefore, that the maker of the note cannot claim the benefit of her own default for the purpose of fixing the date of maturity to her own advantage. Further, the plaintiff's failure to deny a legal conclusion could not take the place of proof of facts. Even though the defendant's assertion that the date of maturity must be taken as May 24, 1925, is accepted, there still is no proof that the transfer by endorsement occurred subsequent thereto.

The defendant offered also a question and answer from a deposition taken on behalf of the plaintiff but not read in evidence, in which George E. Merrick testified that after the payee company endorsed and delivered the note to him it had no equity in it. In connection with this the defendant offered certain notices of instalments due on the note which came from the office of the payee corporation, the Edward E. Dammers Realty Corporation. Some of these, which were in the names of other companies, including West Coral Gables Company and the Kneale-Webster Company, for the account of the present plaintiff, were as late as 1930 and 1931 and would obviously be no evidence of ownership of the note when it became in default, which was not later than July 1926. The earlier notices during 1925 and 1926 contained no statement as to the ownership of the note, but were requests for payment by the Edward E. Dammers Realty Corporation. As that company's office in Miami was the place fixed for payment in the note itself, the mere sending and receipt of such notices does not exclude the inference that that corporation may have been acting as agent for collection purposes only; it is no evidence whatever of where the ownership of the note was at the time, much less of the other elements of a holding in due course. The fact that notices of instalments may have continued as before under these circumstances is no help to the defendant,

for it throws no light upon the question of ownership or when it was acquired, or the circumstances of such acquisition.

The items of evidence referred to constitute the defendant's whole case upon the question whether the plaintiff was a holder in due course. There is no evidence to overcome the presumption in the plaintiff's favor that it is a holder in due course. Neither has the defendant shown that the title of any person who negotiated the instrument was defective as such title is defined under section 55 of the Negotiable Instruments Law. The defendant also offered evidence that the note in question was given in connection with a contract for the purchase of real estate, and to show that there had been a failure of consideration in various respects under the real estate contract. Failure of consideration is not such a showing that the title of any person to the instrument was defective as to overcome the plaintiff's presumption under sections 59 and 55 of the Negotiable Instruments Law: Putnam v. Ensign Oil Co., 272 Pa. 301; Dull v. Mitchell, 283 Pa. 88; Levitt v. Johnstown Office Supply Co., 103 Pa. Superior Ct. 76; Colonial Finance Co. v. Hoover et ux., 112 Pa. Superior Ct. 60.

As all the evidence taken on behalf of the defendant was received upon the condition that the defendant would, before closing her case, give evidence that the plaintiff was not a holder in due course or that the title of some prior owner was defective, and as the defendant never in fact offered such evidence, we think the motion to strike out was properly granted, and that the court's binding instructions to the jury in favor of the plaintiff were proper.

In any event the defendant's motion for judgment non obstante veredicto could not prevail, as the defendant at most could be entitled to have her case submitted to the jury. For these reasons the motion for judgment non obstante veredicto will be refused.